UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TIFFANY PACHECO<br><br>　　　Plaintiff<br><br>v.<br><br>CONSUMER LAW RELIEF, LLC d/b/a<br>HELBING LAW GROUP, LLC<br><br>　　　Defendant. | Case No. 4:23-cv-01022 |

## **DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and Federal Rule of Civil Procedure 12(b)(1), Defendant Consumer Law Relief, LLC d/b/a Helbing Law Group, LLC ("CLR") moves to compel arbitration and to dismiss this action or, alternatively, stay this proceeding until the arbitrator enters a final award, and respectfully shows as follows:

### INTRODUCTION

On June 10, 2021, Plaintiff Tiffany Pacheco ("Pacheco") entered into a Retainer Agreement with CLR, a law firm, to provide legal advice regarding certain of her debts, to negotiate settlement of certain of her debts, and to represent and defend Pacheco in certain legal proceedings relating to those debts. In the Retainer Agreement, CLR and Pacheco agreed to arbitrate "any controversy, claim or dispute . . . arising out of or relating to this [Retainer] Agreement." Now, Pacheco asserts claims arising out of or relating to CLR's provision of services pursuant to the Retainer Agreement. Under settled principles of law and in furtherance of the strong federal policy in favor of enforcing arbitration agreements, the Court should compel Pacheco's claims to arbitration and dismiss the Complaint, or alternatively, stay this action.

Pacheco previously attempted to initiate arbitration,[1] pursuant to the Retainer Agreement, evidencing Pacheco's agreement that the claims at issue are subject to arbitration. However, the American Arbitration Association ("AAA") administratively declined to accept Pacheco's filing because CLR's registration with the AAA had lapsed. CLR has since paid the fees AAA has requested to maintain registration, and there is no impediment to arbitrating Pacheco's claims. To the extent the Court does not compel arbitration, the Court should also strike Pacheco's jury demand because Pacheco's Retainer Agreement includes a Waiver of Jury Trial.

## STATEMENT OF FACTS

Pacheco commenced this action on March 20, 2023 alleging that CLR is a "credit repair organization" and that CLR violated the Credit Repair Organizations Act ("CROA"). DE1 at ¶¶ 24-34. Pacheco also alleges CLR violated New York state law by misrepresenting the credit repair and debt settlement services Pacheco claims CLR agreed to provide. DE1 at ¶¶ 36-39. Factually, Pacheco alleges that CLR told her that, "within 1 year . . . [CLR] will settle all of her enrolled debts . . . and her credit score will see a substantial increase within 3 to 6 months." DE1 at ¶ 11.

CLR denies that it is a credit repair organization, that it provides credit repair services, or that it made the representations Pacheco alleges. In fact, the Retainer Agreement specifies the services to be provided:

> 2. **Scope of HLG's Representation of Client:** HLG will: (A) negotiate Client's debts which are listed on Exhibit A to this Agreement ("Client('s) Debts"), (B) provide Client with legal counsel as to all Client Debts, and (C) represent and defend Client in court in any lawsuits, arbitrations or other proceedings filed against Client by any and all creditors and/or third parties that own and/or have the right to file suit to collect the Client's Debts, subject to the limitations listed below. The terms and scope of HLG's representation of Client are more fully described in paragraph 7 below.

Exhibit A at p. 1. The Retainer Agreement also states that Pacheco's credit "will likely" be

---

[1] Plaintiff's Complaint is actually styled "Demand for Arbitration." Doc. No. 1.

adversely impacted:

> E. HLG cannot stop your creditors from reporting you to consumer reporting and credit agencies as a result of as late, delinquent, charged-off or past due balances. This may, and very likely will occur, and very likely will have an adverse effect on your credit report and credit score.

Exhibit A at p. 6. Immediately above Pacheco's signature on the Retainer Agreement, she was admonished, in all capital letters, to read the agreement and to not sign it if any representative told her anything that was inconsistent with the agreement:

> 14. **READ BEFORE SIGNING.** YOUR SIGNATURE ON THIS AGREEMENT, AND YOUR INITIALS ON THIS AGREEMENT, MEAN THAT YOU HAVE READ AND UNDERSTAND ALL OF THIS AGREEMENT, AND THAT YOU AGREE TO BE BOUND BY THE AGREEMENT. IF ANY REPRESENTATIVE OF HLG HAS TOLD YOU ANYTHING INCONSISTENT WITH THIS AGREEMENT, DO NOT SIGN THIS AGREEMENT. INSTEAD, CALL HLG AND ASK TO SPEAK WITH ERIK M. HELBING.

Exhibit A at p. 9. Regardless of the veracity of Pacheco's allegations that directly contradict the Retainer Agreement, her allegations nonetheless arise out of the services CLR agreed to provide in the Retainer Agreement. *See generally*, DE1 at ¶¶ 7-22. Thus, Pacheco's claims are subject to the parties' binding arbitration agreement:

> 11. **Arbitration of Dispute:** IN THE EVENT OF ANY CONTROVERSY, CLAIM OR DISPUTE BETWEEN THE PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION OR VALIDITY THEREOF, INCLUDING BUT NOT LIMITED TO THE TERMINATION OR THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, WITH THE EXCEPTION OF FEE DISPUTES, SHALL BE DETERMINED BY ARBITRATION BY A SINGLE ARBITRATOR AND ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA"). THIS ARBITRATION SHALL OCCUR AT A LOCATION DETERMINED BY THE AAA. EACH PARTY IS RESPONSIBLE FOR THEIR OWN ATTORNEY'S FEES UNLESS AWARDED AS THE PREVAILING PARTY UNDER APPLICABLE LAW. PRIOR TO INITIATING ANY ARBITRATION, CLIENT AND HLG AGREE TO ATTEND MEDIATION, WHICH SHALL LAST FOR A MINIMUM OF 2 HOURS. THE MEDIATOR SHALL BE AGREED TO BY THE PARTIES, AND MUST BE A CERTIFIED MEDIATOR.

Exhibit A at p. 8. Pacheco also waived her right to a jury trial. *Id.* at 9.

**ARGUMENTS & AUTHORITIES**

I.     **STRONG NATIONAL POLICY FAVORING ARBITRATION**

The Retainer Agreement involves interstate commerce—i.e., Pacheco is in New York, CLR is in Pennsylvania, and her creditors are scattered throughout the country. Thus, the arbitration provision in the Retainer Agreement invokes application of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. The FAA creates a body of federal substantive law applicable in both state and federal courts that governs arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). Congress enacted the FAA "in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Congress thereby "declare[d] a national policy favoring arbitration," (*Preston v. Ferrer*, 552 U.S. 346, 349 (2008)), and required courts to "rigorously" enforce arbitration agreements. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 473 (2015). Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that if a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* at § 4.

In light of the FAA's purpose, a court must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," because a "prime objective" of

4

arbitration "is to achieve 'streamlined proceedings and expeditious results.'" *Preston*, 552 U.S. at 357-58 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth. Inc.*, 473 U.S. 614, 633 (1985)). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Cone Mem'l*, 460 U.S. at 24-25.

The Supreme Court has held that "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Nor may the court review the merits of the underlying dispute in deciding whether to compel arbitration. Instead, "[c]ourts are limited to determinations regarding whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement, including the arbitrability of given underlying disputes under the agreement." *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002).

As an aside, the Texas General Arbitration Act ("TAA") does not apply. Tex. Civ. Prac. & Rem. Code § 171.001, et seq. More specifically, there are no Texas state law claims, neither Pacheco nor CLR are in Texas, and the Retainer Agreement calls for application of Pennsylvania law. Exhibit A at p. 8. Nonetheless, the TAA shares the FAA's strong policy in favor of arbitration, and if the TAA were applied here, the result would be same as if the FAA is applied. Similarly, to the extent Pennsylvania's Revised Uniform Arbitration Act applies, 42 Pa. C.S.A. § 7321, et seq., the result would be the same as if the FAA is applied.

**II.     THE COURT SHOULD COMPEL ARBITRATION**

"Enforcement of an arbitration agreement involves two analytical steps. The first is

contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "Ordinarily both steps are questions for the court. But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Id.* Where the agreement contains a delegation provision,

> the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Id.* at 202 (internal citation omitted). Here, there is a valid, written arbitration agreement and it delegates all questions regarding arbitrability to the arbitrator.

### A. A Valid, Written Arbitration Agreement Exists

"The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Federal law provides that a written provision to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court, "[i]n determining the contractual validity of an arbitration agreement, [applies] ordinary state-law principles that govern the formation of contracts." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004). Here, the Retainer Agreement specifies that it is governed by Pennsylvania law.

Pennsylvania law requires an offer, acceptance, and consideration. *Koken v. Steinberg*, 825 A.2d 723, 729 (Pa.Commw.Ct. 2003). All three requirements are present here. More specifically, CLR offered to provide the services set forth in the Retainer Agreement in exchange

for a fee, and Pacheco accepted by signing the Retainer Agreement, and then proceeded to make payments to CLR. One of the terms of the offer and acceptance was that the parties would submit any disputes to arbitration. Both parties also provided consideration in the form of their mutual promises, and when they both performed, at least partially, under the Retainer Agreement.

> **B.     Any Question of Arbitrability Has Been Delegated**

As noted above, if the Courts finds there is a valid agreement to arbitrate, "the only question . . . is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. This accords with the Supreme Court's mandate that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529.

"In determining whether an arbitration agreement 'clearly and unmistakably' reserves arbitrability questions for the arbitrator, courts ask this question: 'Did the parties agree to submit the arbitrability question itself to arbitration?'" *Phillips*, 2019 WL 4861435 at *5 (quoting *House Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 423 (5th Cir. 2014)). Here, the answer is clearly in the affirmative.

In addition to providing that controversies, claims, and disputes must be arbitrated, the arbitration provision in the Retainer Agreement also provides that issues "arising out of or relating to this [Retainer] Agreement or the breach, termination, enforcement, interpretation, or validity thereof, <u>including but not limited to the termination or the scope or applicability of this agreement to arbitrate</u>, with the exception of fee disputes, <u>shall be determined by arbitration</u>." Exhibit A at

7

p. 8. The parties agreed to arbitrate arbitrability, and therefore all remaining questions have been delegated to the arbitrator.

Even if the Court were to find that it must determine arbitrability, Pacheco's claims against CLR are clearly within the scope of the arbitration provision. It expressly applies to "any controversy, claim, or dispute between the parties arising out of relating to this [Retainer] Agreement, or the breach, termination, enforcement, interpretation, or validity thereof." Exhibit A at p. 8. Pacheco's claims relate to alleged misrepresentations as to the credit repair services Pacheco claims CLR was going to provide, and a failure to provide those services in compliance with CROA. Pacheco cannot establish her claims without reference to the Retainer Agreement, as it contained the parties' promises, defined the services to be provided, and established the parties' obligations. Without the Retainer Agreement, Pacheco would not have paid any fees to CLR, and CLR would not have undertaken debt settlement services for Pacheco.

Moreover, the fact that Plaintiff's claims are statutory does not place them outside the scope of a valid arbitration agreement. "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA," "'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi*, 473 U.S. at 628). "[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree*, 531 U.S. at 92. Pacheco's CROA claim is arbitrable. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 104-05 (2012). Pacheco's New York state law claim arises under a law—like CROA—aimed at businesses involved with credit services and that offer to improve consumers' credit standing. N.Y. Gen. Bus. Law § 458-a(1). There is no authority suggesting the New York statutory claim is not arbitrable.

CLR has amply shown than Pacheco's claims are subject to arbitration. If, however, Pacheco resists arbitration, she "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Bowie v. Edison Sec. Corp.*, No. CIV. 3:00-CV-2700-H, 2001 WL 1076128, *2 (N.D. Tex. Sept. 11, 2001) (quoting *Green Tree*, 531 U.S. at 91). That unsuitability has to be real, not merely a speculative contention, and cannot undercut the FAA. *See id.* Again, when in doubt, questions of arbitrability are resolved in favor of arbitration. *See Cone Mem'l*, 460 U.S. at 24-25.

C. **AAA Will Accept Filing**

As the Court may be aware, the AAA generally requires companies that enter into arbitration agreements with consumers that call for arbitration with the AAA to pay fees to the AAA, often referred to as registering the arbitration agreement. Here, CLR registered its arbitration agreement with the AAA in February 2021, and AAA provided written confirmation to CLR, via email to Erik Helbing. Exhibit B.

In February 2023, Pacheco filed her demand for arbitration with the AAA, and the AAA administratively declined the filing. Exhibit C. The AAA sent Pacheco a letter explaining that Helbing Law Group had failed to comply with administrative requirements to arbitrate with the AAA. *Id.* Notably, the AAA's letter was addressed to Helbing Law Group, and mailed to an address in Houston, Texas; and it was not sent to CLR (in Pennsylvania or elsewhere), and it was not emailed to Erik Helbing. *Id.*

CLR did not receive notice of this action until CLR was served on May 16, 2023. Thereafter, CLR made contact with Pacheco's counsel to seek an agreement to arbitrate. On May 31, 2023, Pacheco's counsel sent CLR's counsel the AAA's February 2023 letter declining to accept the arbitration. Exhibit D. CLR immediately attempted to remedy any administrative issues with the AAA, and on June 8, 2023, the AAA notified CLR that it had failed to pay the AAA's

renewal fees, and that reinstatement required payment of a $600 fee. Exhibit E. The AAA's communication provided:

> Should [CLR] agree to abide by the AAA Consumer Arbitration Rules and pay the 2023 annual renewal fee, the AAA will reinstate the business to the Consumer Clause Registry and administer its consumer cases. The clause that was approved and current at the time of removal from the registry is the clause that will become active with reinstatement. The AAA decision to proceed with administration of [CLR] cases would not be applicable to previously declined cases and applies to new filings from the date of reinstatement on the Consumer Clause Registry. Once reinstated, we would ask that any consumer parties involving a dispute that the AAA previously declined to administer be informed of the reinstatement and the matter would have to be refiled with the appropriate documents.

Exhibit E; Exhibit F (AAA invoice). Immediately upon receiving this communication from the AAA, CLR made a wire transfer to AAA to pay the invoice. Exhibit G. Additionally, the arbitration agreement with Pacheco is identical to the arbitration agreement that AAA previously approved. Thus, CLR has complied with AAA's requirements, and Pacheco's claims may be arbitrated with the AAA.

The administrative issue described above is not grounds to deny enforcement of an arbitration agreement. *See, e.g., Edmondson v. Lilliston Ford Inc.*, No. 17-1991, 722 Fed. Appx. 251, 254 (3rd Cir. Jan. 11, 2018) (where defendant corrects administrative registration with AAA and AAA is willing to accept case, it was proper to compel arbitration); *Manley v. Diversified Recovery Bureau, LLC*, 20-CV-551, 2021 WL 4324412, *2-3 (W.D.N.Y. Sep. 23, 2021).

### III.   THE CASE SHOULD BE DISMISSED, NOT STAYED

Finally, the proper disposition of this case after compelling the parties to proceed to arbitration should be dismissal. The FAA provides, in pertinent part, that a court compelling arbitration "*shall* on application of one of the parties[,] *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). "This rule, however, was not intended to limit dismissal of a case in the proper

circumstances. The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Here, because all of Plaintiff's claims are subject to and should be compelled to proceed to arbitration, the court should exercise its discretion to compel arbitration and dismiss this case.

## CONCLUSION

For the foregoing reasons, the Court should enter an order compelling the arbitration of Plaintiff's claims and dismissing this case. Alternatively, the Court should enter an order compelling arbitration and staying proceedings until the arbitrator enters a final award.

Dated: June 20, 2023

Respectfully submitted,

GREENSPOON MARDER LLP

*/s/ B. Eliot New*
B. Eliot New
Texas Bar # 24060328
S.D. Texas Bar # 884608
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 491-1120
Facsimile: (954) 343-6958
eliot.new@gmlaw.com

*Attorney for Defendant*

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that I have conferred with Plaintiff's counsel, and Plaintiff is opposed to the relief requested.

*/s/ B. Eliot New*
B. Eliot New

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via ECF on June 20, 2023.

>  /s/ B. Eliot New
>  B. Eliot New