UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TIFFANY PACHECO<br><br>    Plaintiff<br><br>v.<br><br>CONSUMER LAW RELIEF, LLC d/b/a<br>HELBING LAW GROUP, LLC<br><br>    Defendant. | Case No. 4:23-cv-01022 |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO MOTION TO COMPEL ARBITRATION**

Defendant filed its Motion to Compel Arbitration and Supplement to same, DE23-24, Plaintiff filed her Response, DE 26, and Defendant respectfully files this Reply brief:

### INTRODUCTION

In response to Consumer Law Relief, LLC's ("CLR") Motion, Pacheco argues that CLR waived its right to seek arbitration. However, in doing so, Pacheco mischaracterizes the underlying facts, arguing that CLR knowingly failed to pay fees attendant to Pacheco's particular arbitration claim. Pacheco relies on several inapposite cases discussing waiver, and similar legal concepts, when a defendant is made aware of a particular demand for arbitration, intentionally refuses to pay the fees associated with that arbitration, and the arbitration forum terminates that arbitration due to the defendant's failure to participate. Here, however, that did not occur.

CLR failed to renew the annual registration of its arbitration agreement with the Consumer Clause Registry under the AAA's Consumer Protocol, which is an administrative issue unrelated to this particular claim. CLR did not receive notice of Pacheco's demand for arbitration, and was not aware any administrative issues until after Pacheco filed this lawsuit. Upon receiving notice,

CLR immediately corrected the administrative failure to renew registration and paid the requisite fee for the registration (not for Pacheco's arbitration which was not then pending).  CLR has not refused to pay any fees to AAA associated with Pacheco's arbitration, has not intentionally waived any rights, and AAA is willing to accept Pacheco's claims for arbitration.

### PACHECO MISCHARACTERIZES THE FACTS

Pacheco flatly states that CLR "failed to pay the arbitration fees in the arbitration that was previously initiated."  Response at 1 [DE 26].  However, this is factually untrue.  As recited in CLR's Motion, and supported by record evidence, CLR registered its arbitration agreement with the Consumer Clause Registry under the AAA's Consumer Protocol in February 2021, two years before Pacheco's filed her claim, and AAA provided written confirmation to CLR, via email to Erik Helbing.  Exhibit B [DE 23-2].  In February 2023, Pacheco filed her demand for arbitration with the AAA, and the AAA administratively declined the filing.  Exhibit C [DE 23-3].  The AAA sent Pacheco a letter explaining that "Helbing Law Group" had failed to comply with administrative requirements to arbitrate with the AAA.  *Id.*  Notably, the AAA's letter was addressed to "Helbing Law Group," and mailed to an address in Houston, Texas; and it was not sent to CLR (in Pennsylvania or elsewhere), and it was not emailed to Erik Helbing.  *Id.*

CLR did not receive notice of Pacheco's legal claim until CLR was served in this case on May 16, 2023.  Thereafter, CLR made contact with Pacheco's counsel to seek an agreement to arbitrate.  On May 31, 2023, Pacheco's counsel sent CLR's counsel the AAA's February 2023 letter declining to accept the arbitration.  Exhibit D [DE 23-4].  CLR immediately sought to remedy any administrative issues with the AAA, and on June 8, 2023, the AAA notified CLR that reinstatement for failure to renew the registration required payment of a $600 fee.  Exhibit E [DE 23-5].  The AAA's communication provided:

> Should [CLR] agree to abide by the AAA Consumer Arbitration Rules and pay the 2023 annual renewal fee, the AAA will reinstate the business to the Consumer Clause Registry and administer its consumer cases. The clause that was approved and current at the time of removal from the registry is the clause that will become active with reinstatement. The AAA decision to proceed with administration of [CLR] cases would not be applicable to previously declined cases and applies to new filings from the date of reinstatement on the Consumer Clause Registry. Once reinstated, we would ask that any consumer parties involving a dispute that the AAA previously declined to administer be informed of the reinstatement and the matter would have to be refiled with the appropriate documents.

Exhibit E [DE 23-5]; Exhibit F [DE 23-6] (AAA invoice). Immediately upon receiving this communication from the AAA, CLR made a wire transfer to AAA to pay the invoice. Exhibit G [DE 23-7]. The AAA subsequently agreed, in writing, to accept matters for arbitration with CLR. Exhibit H [DE 24-1]. CLR removed the administrative impediment to pursing this claim in arbitration within several weeks of learning, form Pacheco's counsel, of the situation. CLR was indisputably diligent in removing the administrative obstacle to Pacheco's prosecution of her claim in arbitration as she agreed to do.

### PACHECO RELIES ON INAPPLICABLE LAW

Pacheco's mischaracterization of the AAA scenario is important because the failure to administratively renew a registration with the AAA is not grounds to deny enforcement of an arbitration agreement, but an intentional refusal to pay the fees to arbitrate a particular dispute has been found to be a waiver of the right to arbitrate.

More specifically, as set forth CLR's Motion, where a defendant corrects administrative registration with the AAA and the AAA is willing to accept the case, it is proper to compel arbitration. *See, e.g., Edmondson v. Lilliston Ford Inc.*, No. 17-1991, 722 Fed. Appx. 251, 254 (3rd Cir. Jan. 11, 2018) (where defendant corrects administrative registration with AAA and AAA is willing to accept case, it was proper to compel arbitration); *Manley v. Diversified Recovery Bureau, LLC*, 20-CV-551, 2021 WL 4324412, *2-3 (W.D.N.Y. Sep. 23, 2021).

None of the cases relied upon by Pacheco are binding, and they are all distinguished and involve the initiation of arbitration proceedings, and the party to that specific arbitration intentionally refusing to participate in that particular arbitration proceeding—*i.e.,* waiver. More specifically, Pacheco relies on the following inapplicable cases:

- **<u>Pre-Paid Legal Services, Inc. v. Cahill</u>, 786 F.3d 1287 (10th Cir. 2015)**: this case involved a former employer filing suit, and the former employee seeking to compel arbitration. Once in arbitration, the former employee refused to pay the fees for that arbitration, after several notices, and the arbitration forum terminated the arbitration. *Id.* at 1294-98. The question was whether the former employee was in default in arbitration which, pursuant to Section 3 of the Federal Arbitration Act, meant that the lawsuit no longer needed to be stayed. The court held that a stay was no longer appropriate because the former employee who actually sought arbitration was in default in arbitration. This case is distinguished because CLR did not refuse to pay any fees for this particular arbitration claim, CLR did not purposefully refuse to participate in Pacheco's arbitration (of which it was unaware), the arbitration forum has not terminated any arbitration, and the arbitration forum remains willing to accept the matter for arbitration.

- **<u>Brown v. Dillard's, Inc.</u>, 430 F.3d 1004 (9th Cir. 2005)**: in this case, a former employer refused to arbitrate a dispute with a former employee by (1) refusing to pay the fees for arbitration with that employee, and (2) expressly stating that it would not arbitrate because it did not believe the employee's claims had merit. *Id.* at 1008-09. The court found the employer waived its right to arbitrate, which requires an intentional act. *Id.* at 1012-13. The court also found that the employer could not enforce an arbitration agreement it had materially breached by refusing to arbitrate when the employee initially

4

initiated arbitration. *Id.* at 1010-12.

- **<u>Sink v. Aden Enters., 352 F.3d 1197 (9th Cir. 2003)</u>**: in this case, an employer agreed to arbitrate an employee's claims, and to pay the arbitration fees, but after several warnings and notices that it acknowledged receiving, the employer refused to pay the fees. *Id.* at 1198-99. Ultimately, the arbitration forum cancelled the arbitration, the claimant moved for default in arbitration, and the arbitration forum entered default. *Id.* at 1199. In that situation, pursuant to Section 3 of the FAA, the employer had no right to arbitration.

The other cases Pacheco relies upon similarly involve an intentional refusal of the party, after receiving multiple warnings and notices, to pay fees associated with a specific arbitration matter, and a finding that the party defaulted in the arbitration. *See, e.g., Stowell v. Toll Brothers, Inc.*, Case No. 2:06-cv-01203-PD, 2007 U.S. Dist. LEXIS 287, at *3 (E.D. Penn. Jan. 4, 2007); *Mason v. Coastal Credit, LLC*, No. 3:18-cv-835-J-39MCR, 2018 WL 6620684 (M.D. Fla. Nov. 16, 2018).

Not only are all the cases Pacheco relies upon distinguished on the facts, but the legal theories also do not fit the present case. More specifically, in the present case, the AAA did not terminate any arbitration proceeding based on default, or actually enter a default, which might potentially obviate the right to arbitrate pursuant to Section 3 of the FAA.

Similarly, CLR did not intentionally waive its right to arbitrate. First, waiver must be intentional. *Addicks Servs. v. GGP-Bridgeland, LP*, 596 F.3d 286, 298-99 (5th Cir. 2010). With respect to the right to arbitrate, waiver also requires (1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that existing right, and (3) prejudice to the party opposing arbitration. *Brown*, 430 F.3d at 1012. Here, the facts do not suggest any basis to conclude that CLR was aware of Pacheco's claims or her demand for arbitration, or that CLR intentionally

waived its right to arbitrate Pacheco's particular claim. The one case cited by Pacheco as to the standard for waiver involved the defendant substantially invoking judicial process. Response at 2. First, the case cited by Pacheco has been abrogated and is no longer good law. *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 404 (5th Cir. 1986), *abrogated by Morgan v. Sundance, Inc.*, --- U.S. --- , 142 S.Ct. 1708 (2022). But, just as importantly, CLR has not substantially invoked the judicial process under any standard, and there could not possibly be a waiver based on CLR filing a Motion to Compel Arbitration.

Finally, CLR did not breach its agreement to arbitrate, as found in *Brown*, as CLR has never repudiated the arbitration agreement, or refused to arbitrate after receiving notice of any demand to arbitrate.

## CONCLUSION

For the foregoing reasons, the Court should grant CLR's Motion and enter an order compelling arbitration of Pacheco's claim and dismissing this case. Alternatively, the Court should enter an order compelling arbitration and staying proceedings until the arbitrator enters a final award.

Dated: July 18, 2023

Respectfully submitted,

GREENSPOON MARDER LLP

*/s/ B. Eliot New*
B. Eliot New
Texas Bar # 24060328
S.D. Texas Bar # 884608
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 491-1120
Facsimile: (954) 343-6958
eliot.new@gmlaw.com

*Attorney for Defendant*

6

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via ECF on July 18, 2023.

                                                */s/ B. Eliot New*
                                                B. Eliot New